Bostwick *v.* Baltimore and Ohio Railroad Company.

member of the bar, to ascertain what would be, under the circumstances, a suitable provision to be made by the defendant for her support and alimony.

[LIVINGSTON SPECIAL TERM, April 26, 1869. *E. D. Smith*, Justice.]

———•●•———

## BOSTWICK *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

Where a bill of lading is made out by the carrier and delivered to, and accepted by, the shipper, all previous parol agreements are merged in it, and the shipper, by such acceptance, becomes bound by its terms.

If a carrier has acted under a bill of lading as delivered to the shipper and accepted by him, and a loss occurs from one of the perils mentioned in such bill, as exempting the carrier from liability, no recovery can be had therefor.

Where, by a bill of lading, goods were to be transported from Cincinnati to New York, over certain specified railroads, to Belle Air, "and there delivered to the agents of the next connecting *steamboat*, railroad company or forwarding line," &c.; *Held* that the bill of lading was conclusive evidence as to the contract which the carrier made; and that under it the carrier was not bound to carry entirely by railroad.

THIS action was brought to recover the value of sixteen bales of cotton, (being part of fifty-four bales,) shipped by the plaintiff from Cincinnati to New York, to be transported, as the plaintiff claimed, by the defendant upon its railroad and other connecting railroads, as a common carrier.

The plaintiff alleged in his complaint that the defendants were and are a corporation, and acted, and are acting, as common carriers of passengers and property for hire. That as a part of their said business, the said defendants had, and still have, a connection with the Little Miami Railroad Company, the Columbus and Xenia Railroad Company, and the Central Ohio Railroad Company, and other railroad companies; each of said companies being

then, and still being, a corporation and common carrier for hire of both passengers and freight, in such a manner as to form and make a continuous railroad connection from the city of Cincinnati to the city of New York. That each of said several railroads, and its agents, were, and still are, the agents of the defendants, and of each other. That on or about the 15th day of November, 1865, the plaintiff made a contract with the defendants, through their agent, G. F. Cooke, who represented the defendants and said other railroad companies, for the transportation of fifty-four bales of cotton, from said city of Cincinnati to the city of New York, entirely by railroad, and over and upon the defendants' railroad, and for its delivery in the city of New York, and that the plaintiff paid the defendants the entire freight for such transportation, and the defendants entered upon the performance of said contract. That the defendants failed to perform said contract on their part, and failed to transport and deliver sixteen bales of said cotton at the city of New York, although such delivery had been demanded of them, but converted said sixteen bales of cotton, containing seven thousand, seven hundred and eighty-eight pounds, or thereabouts, being of the value of five thousand dollars, or thereabouts, to their own use, to the plaintiff's damage of five thousand dollars. Wherefore the plaintiff demanded judgment against the defendants for the sum of five thousand dollars as damages, besides costs and disbursements.

The defendants, by their answer, denied: *First.* That as a part of their business, they formed and had, and still have, a connection with the Little Miami Railroad Company, the Columbus and Xenia Railroad Company, and the Central Ohio Railroad Company, and the other railroad companies, in such a manner as to make and form a continuous railroad, connecting from the city of Cincinnati to the city of New York, as alleged in the complaint; and they also denied that each of said several railroads,

and its agents, or either of them, were or still are the agents of the defendants, and of each other, as also alleged in said complaint. *Second.* The defendants denied that on the 15th of November, 1865, the plaintiff made a contract with them, through their agent, G. F. Cooke, representing the defendants, and said other railroad companies, for the transportation of fifty-four bales, or any other quantity of cotton, from the city of Cincinnati to the city of New York, but, denying that the Little Miami Railroad Company, or the said G. F. Cooke, were, or are, agents of the defendants, they admitted that at the time aforesaid, the said last named company, or the Central Ohio Railroad Company, did, through G. F. Cooke, the agent of the said last named companies, or one of them, at Cincinnati aforesaid, contract with the plaintiff to transport fifty-four bales of cotton from that city to the city of New York, by the said Little Miami and Columbus, and Xenia, and Central Ohio roads, and by these defendants' roads, upon the stipulations as to liability of said several companies, contained in a bill of lading, which, as the defendants believed, was signed by said G. F. Cooke, as agent of said Little Miami, and Columbus, and Xenia, and Central Ohio roads, or of one of them, and by him delivered to said plaintiff, and by which it was, among other things, stipulated that in case of loss or damage to said cotton, in course of transportation, by which a legal liability or responsibility should be incurred, that company alone should be held accountable therefor, in whose actual custody the same might be at the time of the happening of such loss or damage; and that the carrier so liable should have the full benefit of any insurance that might have been effected upon or on account of said cotton. And the defendants alleged that in the transportation of said cotton, the road of the defendants, commencing at Benwood, on the Ohio river, and terminating at the city of Baltimore, was used by said other roads or road so contracting with the plain-

tiff, as a connecting road, the defendants' road connecting with the said Central Ohio road at Benwood aforesaid; and the defendants undertook to carry said cotton from said Benwood to the city of New York, on the terms and stipulations contained in said bill of lading, and on no other, and in the usual and customary way of transporting goods received by them for transportation to the city of New York. That the usual and customary way or mode of transportation by the defendants, of goods received by them on their road, destined to the city of New York, after their arrival at Baltimore, is, in the absence of an agreement to the contrary, to transport the same by sea, by a line of steamers employed by them between said cities, and this custom was well known to the plaintiff. That in the present instance no agreement was made between the plaintiff and themselves, or between themselves and the other roads, or either of them, to transport said cotton from Baltimore to New York by railroad, or in any other than said customary way; and they denied the allegation in the complaint, that they agreed to transport said cotton from the city of Cincinnati to the city of New York, entirely by railroad. They alleged that the said cotton, on its arrival at Baltimore, was shipped by them by said line of steamers, in due course of transportation, to the city of New York, and according to their usual course of business; and the said sixteen bales of said cotton, claimed in this action, were lost at sea by the dangers of navigation, to wit, by shipwreck of the steamer Alleghany, in which they were, during the transportation thereof in said steamer, which constituted one of said line of steamboats between the cities of Baltimore and New York, on their passage to the latter city; and the defendants alleged that by the express terms of said bill of lading and contract aforesaid, the defendants were exempted from liability for losses or damage to goods transported by them, by the dangers of navigation while in seas, rivers, lakes

or canals, by reason whereof the defendants claimed that they were not liable to the plaintiff for the damages claimed in this action, or for any damages whatever. And the defendants, for a further defense, alleged, on information and belief, that the plaintiff effected insurance on said cotton, but that said insurance did not cover the risks of its transportation by sea as aforesaid, wherefore the plaintiff was unable, in the event of a recovery against the defendants, to give to them the benefit of said insurance, as by the stipulations of said bill of lading or contract he was bound to do. The defendants denied that they had converted said sixteen bales of cotton to their own use, and demanded that the complaint be dismissed, with costs and allowances to them.

On the trial, before Justice MORGAN and a jury, the plaintiff, being examined as a witness, testified that he made an arrangement with one Grant F. Cooke, in Cincinnati, between the 12th and 15th days of November, 1865, for the transportation of fifty-four bales of cotton from the city of Cincinnati to the city of New York, by the defendants' line of railroad, in connection with the Little Miami, Central Ohio, and Xenia roads. That Cooke represented himself to be the agent of these roads. That the cotton was to go *all the way by rail*, and the plaintiff agreed to pay all rail freight. The cotton was sent to the depot at Cincinnati for shipment, and the receipts therefor sent by the plaintiff to Cooke's office for the bill of lading, which was sent to the plaintiff the next day or the day after. These receipts were not produced, but the bill of lading was in evidence. It does not state that the cotton was to go by *all rail*. It acknowledges the receipt of fifty-four bales of cotton, "to be transported by the Little Miami, and Columbus, and Xenia railroad companies, to Columbus, and there delivered to the agents of the Central Ohio Railroad, and by them transported to Belle Air, and there delivered to the agents of the next

connecting steamboat, railroad company or forwarding line, until the said goods or merchandise shall have reached the point named in this bill of lading." The bill of lading contained a clause exempting the defendants from liability "for loss or damage by fire, collision, or the dangers of navigation, while in seas, rivers, lakes or canals;" also this clause: "In accepting this bill of lading, the shipper or other agent of the owner of the property carried, expressly accepts and agrees to all its stipulations, exceptions and conditions." It was customary for the defendants, on goods arriving at Baltimore, to send them on to New York, either by steamer outside, or by sea, or by rail; and it was claimed that they were governed in their action in this respect by the directions of the bill of lading, one of which is usually forwarded with the goods. In this instance the defendants shipped the cotton, on its arrival in Baltimore, by the steamer Alleghany, and sixteen bales were lost by the stranding of the vessel outside of the harbor of New York. It is for this loss the present action is brought. The defense was that the defendants never contracted to carry the cotton other than according to the terms of the bill of lading; that the bill of lading did not direct them to forward the goods "all rail;" that they sent the cotton by the customary way—by sea—in the absence of an agreement to the contrary, and that by the express terms of the bill of lading they are exempted from losses by the dangers of navigation at sea. The bill of lading was dated 15th November, 1865, and it seems that on the same day, after getting his bill of lading, the plaintiff effected insurance on the cotton, in Cincinnati, *all rail* to New York. This latter evidence, and a great portion of the whole evidence, was taken under the defendants' objection and exception.

At the close of the plaintiff's evidence, the defendants' counsel moved to dismiss the complaint upon the following grounds: 1st. "That it has not been proved that Mr. Cooke

could make any bargain for the defendants. 2d. That
the bargain, whatever it was, was reduced to writing,
and in the form of a bill of lading, and by that the rights
of the parties are to be governed. The bill of lading is a
binding contract, and cannot either be contradicted or sup-
plied by parol proof; that by the terms of the bill of
lading, the defendants had the right to send said cotton
from Baltimore to New York by sea; and that by the
terms of the bill of lading, the carrier was not responsible
for losses by peril of the sea." The plaintiff's counsel
replied: "It is in proof here that the plaintiff's attention
was never called to the printed part of the bill of lading,
which the defendants claim amounts to a contract;" and
he asked the court to submit the questions of fact in the
case to the jury, which the court refused, and the plaintiff
excepted. The plaintiff's counsel asked the court to direct
the jury to find a verdict for the plaintiff, which the court
refused, and the plaintiff excepted. The defendants' mo-
tion to dismiss the complaint was granted, with direction
that the exceptions be heard, in the first instance, at the
general term, and that judgment in the meantime be sus-
pended; to which the plaintiff excepted.

*John Slosson,* for the defendants. I. This is an attempt
to recover upon an alleged parol agreement made cotem-
poraneously with, or just anterior to, a written contract
between the parties, covering the whole subject. Such an
action cannot be sustained. The whole evidence relating
to the parol understanding was inadmissible, and was ob-
jected to by the defendants, and received under their
exceptions.

II. That a bill of lading, in everything but the receipt,
constitutes a contract, to be considered, like all other writ-
ten contracts, according to the legal import of its terms,
and cannot be varied or supplemented, or added to by
parol evidence, is a proposition so old, so long established

and supported, without contradiction, by such a series of authorities in England and this country, that it may be assumed without the citation of a single authority. Had even the alleged prior agreement to send the cotton by "all rail" been in writing, it would have been superseded by the bill of lading. (*Renard* v. *Sampson*, 2 *Kern.* 561. *S. C.*, 2 *Duer*, 285. *White* v. *Van Kirk*, 25 *Barb.* 16. *Creery* v. *Holly*, 14 *Wend.* 26.)

III. The only instance in which a prior parol agreement is not merged in the subsequent written contract, is when the parol agreement constitutes the principal contract, and the written one is merely incidental and subordinate, as where a power of attorney is delivered in part performance of a prior oral agreement, of which it is a mere incident. (*Hutchins* v. *Hebbard*, 34 *N. Y. Rep.* 24.)

IV. The bill of lading in the present case being entirely silent as to the mode in which the goods were to be forwarded to New York, whether "all rail" or "rail and water," the plaintiff cannot show that he understood in conversation with the agent, or that it was agreed between them, that the goods should be sent "all rail." Such evidence is wholly inadmissible, and ought not to have been received in this case. The case of *White* v. *Van Kirk* (25 *Barb.* 16) is on all fours with the present case, and has never been reversed.

V. As the defendants are expressly exempted by the bill of lading from liability for this loss, the plaintiff was properly nonsuited.

VI. There is no sufficient proof of the agency of Cooke.

VII. None of the plaintiff's exceptions are well taken. 1st. The first exception is at folio 23. The plaintiff was endeavoring to show that the defendants had separated these sixteen bales from the others, and were negligent in delaying them, and that if they had not been thus negligent the loss would not have occurred. The court itself interfered, and said that such evidence had too remote a

bearing on the contract. There was but one question at issue on the pleadings, and that was, what had the defendants contracted to do? There was no question of negligence in the case. 2d. The second exception is at folio 46. The plaintiff had offered to show that John King, Jr., auditor and general freight agent of the defendants, said to the plaintiff that if he would procure an affidavit of one of the officers of the insurance company that this property was insured all rail, he would settle this claim. In connection with the offer, he proved that he procured such an affidavit, and presented it to Mr. King, and he refused to pay the claim. The plaintiff also proved that it was customary for King to settle these various losses occurring over the road, and that he had been acting in that capacity. (*a.*) This evidence could only be material as an admission by the defendants that they were legally liable to pay. Such an admission, if made, is never binding. (4 *Wend.* 292.) Admissions are binding only as to facts. A party cannot admit away his legal rights; certainly not in any case not amounting to an estoppel. Mr. King could not (even if he had a general authority to make admissions) create a liability, by the mere admission that one existed. (*b.*) No authority is shown on the part of King to make such admissions. (*c.*) If his agency had been sufficiently proved to have made his admissions binding on his principal, this would not be an admission of that sort; it forms no part of the *res gestæ* of the transaction to which the admission relates; it was made after the transaction; was wholly gratuitous, and can in no sense operate to estop the defendants from claiming their legal rights under the contract. (*Trustees Baptist Church* v. *Brooklyn Fire Ins. Co.,* 28 *N. Y. Rep.* 153. *Schrœppell* v. *Oswego and Syracuse Plank Road Co.,* 7 *How.* 94. *Budlong* v. *Van Nostrand,* 24 *Barb.* 25. *Isles* v. *Tucker,* 5 *Duer,* 393.) 3d. The last exception was to the refusal of the judge to submit the case to the jury. There was nothing to sub-

mit. The bill of lading spoke for itself. The plaintiff himself had proved the custom of the defendants as to forwarding goods from Baltimore. The plaintiff could only recover on the contract, and that gave him no right to recover for this loss.

*D. M. Porter,* for the plaintiff. I. The contract for transporting the cotton was made by parol, for all rail to New York. An all rail rate was agreed to be paid at New York, for the entire distance. The cotton was all shipped together. No receipt or other writing was made, nor was there any for two or three days after the cotton had been delivered and shipped, (forwarded,) when the defendants' agent sent down a receipt, (improperly called a bill of lading,) which the plaintiff never read. We therefore say that the contract was a parol contract to carry all rail to New York, and that the written receipt, called a bill of lading, never took effect. 1. But even if it did, it expressed on its face that an all rail rate was to be paid, to wit, $1.60 per hundred, and that being written on it, and it containing no other direction how the cotton was to be carried, it amounted to a contract to carry all rail. The plaintiff on the face of the paper could not be forced to pay a higher rate for all rail than he would by water, to avoid the risks of navigation, and then be forced to take the risks of navigation, the rate for which was less than by all rail, which (all rail rate) is what he contracted to pay, and actually did pay for. If the alleged writing had been for transportation by water, the rate expressed would have been $1.50 instead of $1.60; consequently it bears upon its face an all rail agreement. 2. Again, if this construction is not put upon the contract, it must be construed by all of the surrounding facts; that is, what was said and done. (*Bancroft* v. *Winspear,* 44 *Barb.* 209. *Le Sage* v. *Great Western Railway Co.*; 1 *Daly,* 306.) "Viewed and construed by the facts to throw light upon it, it makes it

an unqualified all rail contract." (*Le Sage* v. *Great Western Railway Co., supra.*) It should be read in the light of all the surrounding circumstances. (*French* v. *Carhart,* 1 *Comst.* 102. *Hutchins* v. *Hebbard,* 34 *N. Y. Rep.* 24. *Agawam Bank* v. *Strever,* 18 *N. Y. Rep.* 509.) 3. If the figures 1.60, being the all rail rate, did not make a contract, there is none expressed on the face of the writing, and "it is competent to prove an antecedent parol agreement of a different character, and imposing very different, but not inconsistent obligation," and "by calling in the aid of all the circumstances, a fair explanation of the contract is that it was to be forwarded by all rail to New York." By so doing, it does not disprove a written agreement, but shows an independent agreement. (*Blossom* v. *Griffin,* 3 *Kern.* 569, 574. *Le Sage* v. *Great Western Railway Co., supra.*) Absence of technical promissory words is of no moment. (*Bank of Michigan* v. *Ely,* 17 *Wend.* 508, 512. *Ulster County Bank* v. *McFarlan,* 5 *Hill,* 432.) Being an all rail contract, the defendants are liable. (*Wilcox* v. *Parmelee,* 3 *Sandf.* 610.) 4. But there was no written agreement that the cotton might be carried by water. In order to make an agreement, at least two minds must come together, as to its terms. The plaintiff never read the writing sent to him. Again, the paper is identical in legal effect with the one stated in the case of *Belger* v. *Dinsmore,* (34 *How.* 421; *De Barre* v. *Livingston,* (48 *Barb.* 511.) The bill of lading, if given at the time, would have only amounted to a mere notice, (see same case,) when in fact it was not "sent down" for some days after. If a contract had been made for rail and water, the plaintiff would not have insured the cotton all rail. There can be no pretense that he ever read the paper. 5. Unless the writing (if of any force) be an all rail contract, it is ambiguous and may be explained by parol proof. (*Fish* v. *Hubbard's Adm'rs,* 21 *Wend.* 657. *Smith* v. *N. Y. Cent. Railroad,* 43 *Barb.* 225. *Bradley* v. *Washington &c.,* 13 *Peters,*

89. *Spencer* v. *Babcock*, 22 *Barb.* 326. *Scovill* v. *Griffith*, 2 *Kern.* 509.) For, the figures 160 being the all rail rate, are written, and would control any printed matter. (*Dana* v. *Fiedler*, 2 *Kern.* 40. *Pollen* v. *Leroy*, 30 *N. Y. Rep.* 549. *Woodruff* v. *Com. Ins. Co.*, 2 *Hilt.* 122. *Coope* v. *Smith*, 1 *Smith's Leading Cases*, 305.)

II. If there is nothing on the face of the writing (if it be of any force) specifying how the cotton shall be transported, the plaintiff could have given notice to the carriers (which he did do) to carry all rail, and the defendants would have been obliged to carry out such instructions, or they would have made themselves liable for disobeying the instructions, (*Johnson* v. *The N. Y. Cent. Railroad*, 33 *N. Y. Rep.* 610;) in which case there was a bill of lading and parol notice, and the carrier was held liable on a state of facts nearly identical with the facts of the case now under consideration. (*Miller* v. *Steam N. Co.*, 6 *Seld.* 431. *Le Sage* v. *Great Western Railway Co.*, *supra*. *Goold* v. *Chapin et al.*, 20 *N. Y. Rep.* 259.) The carriers cannot contract for their own negligence; neither can they fail in the performance of their contract, and compel the plaintiff to bear the loss arising therefrom.

III. That Cooke was agent, appears from the receipt or writing, where the defendants' name appears as a party to the bill of lading; by his representations; by the defendants' receipt of the goods under that writing; by the defendants' collection of the freight for the entire distance, and recognizing the contract; also, by carrying the goods under the writing. (*Schroeder* v. *Hudson River Railroad*, 5 *Duer*, 55. *Hart* v. *Rensselaer Railroad*, 4 *Selden*, 37. *Quimby* v. *Vanderbilt*, 17 *N. Y. Rep.* 306.)

IV. But a full and complete right of action exists in the plaintiff against the defendants, even if the contract was agreed to by both parties that the cotton might be shipped by both rail and water; or to put it stronger, if it had been stipulated it should be carried by water and in no

other manner. 1. Because the defendants made themselves liable by their negligence in separating the cotton. 2. Because they delayed the transportation of the cotton nearly one month, when it ought to have reached New York within a week. If these sixteen bales had been delivered in New York at the time the other thirty-five bales were actually delivered, which was on the twelfth day after the shipment, no loss would have occurred. This case is one of a company by its neglect in transportation causing a loss, collecting the freight for what is not delivered, and refusing repayment, and then trying to evade responsibility for such negligence. 3. By not performing their agreement to carry all rail, it being insisted upon that such was the contract as originally agreed upon, and that it could not be changed without the knowledge and concurrence of the plaintiff, which was never given, the contract was made, and sending a notice to the plaintiff, which he never saw, could not change it. 4. In any event, the cotton having been delayed by the negligence of the defendants, they are liable, whatever the contract may have been, as " when goods are delivered to a connecting road, to be transported, it becomes its duty to send them off at once." (*Michaels* v. *N. Y. Cent. Railroad Co.*, 30 *N. Y. Rep.* 564, *identical with our case. Read* v. *Spaulding, Id.* 630.) A carrier is responsible for loss of goods, even by act of God, if he by unreasonable delay in their transportation exposed them to loss. (*Read* v. *Spaulding*, 5 *Bosw.* 395.) He must proceed with reasonable diligence. (*McAndrews* v. *Adams*, 1 *Bing. N. C.* 29. *Lawrence & Co.* v. *Prov. and S. Railroad Co., Superior Court, Norwich, Conn., MS.*)

V. The court below erred in holding the writing was a contract and that the burden of proof was upon the plaintiff, when the converse is true. " The carrier must prove the loss was within the limit of his contract, or it will be presumed that it was such as he was liable for." (*Finn* v. *Timpson*, 4 *E. D. Smith*, 276.) Where is there

such proof? "The carrier is bound to provide a ship, staunch, strong and suitable, equipped for the voyage with proper officers and a proper crew." (*Camden and Amboy Railroad Co.* v. *Burke*, 13 *Wend.* 611, 627, 628.) The presumption is against the carrier. (*Angell on Carriers*, § 156.) Where is the proof that the failure to deliver was caused by "perils of the sea?" For aught that appears, the steamer may have been wrecked by other causes, such as neglect, want of a proper ship, want of proper officers or a proper crew, want of proper equipment.

Lastly. The defendants through their agent, "acting as the defendants' agent in settling these various losses over their road," promised to settle the plaintiff's claim on producing an affidavit, which was equivalent to a promise to pay it. (*Pinkerton* v. *Bailey*, 8 *Wend.* 600. *Stilwell* v. *Coope*, 4 *Denio*, 225.) The plaintiff did so, and the defendants are concluded by it. (*Hurd* v. *Pendrigh*, 2 *Hill*, 502.) The defendants had the plaintiff's demand before them when they made the proposition, and they are liable. (*Brooks* v. *Ball*, 18 *John.* 337.) The court therefore erred in overruling the several objections, and in its rulings. The court ought to have reformed the writing and rendered judgment for the plaintiff. (*Meyer* v. *Fiegel*, *Trans. Feb.* 12, '68. *Wright* v. *Hooker*, 9 *N. Y. Rep.* 59.) There being evidence to be passed upon by the jury, the court could not dismiss the complaint. (*Hoagland* v. *Miller*, 16 *Abb.* 103. *Sheldon* v. *Atlantic Ins. Co.*, 26 *N. Y. Rep.* 460, 465.)

*By the Court*, G. G. BARNARD, J. The plaintiff accepted the bill of lading, and by such acceptance became bound by its terms. All previous parol agreements were merged in it. It is no defense to the plaintiff, against its provisions, that he did not read the contract. The defendants could not know whether he did or did not read it. The defendants' company acted under the bill of lading as delivered to the plaintiff and accepted by him. The loss is

one provided against in this contract. The carriers were not to be liable "for dangers of navigation while on seas." The loss is admitted to have occurred on steamer "which was wrecked on the way from Baltimore to New York."

The pleadings present no question of negligence. The allegation is that the defendants agreed to transport the cotton entirely by railroad. This is denied, and the bill of lading is conclusive evidence as to the contract which the defendants made, and under it the defendants were not bound to carry entirely by railroad.

There is no proof of the authority of the auditor of the defendants to promise to pay a disputed claim against the defendants and finally bind the defendants by his promise. The evidence offered was properly rejected.

The judgment should be affirmed, with costs.

[NEW YORK GENERAL TERM, June 7, 1869. *Clerke, Geo. G. Barnard* and *Cardozo*, Justices.]